UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HARRY M. FULLER, III,
*Executor of the Estate of*
*Harry H. Fuller II,*

                **Plaintiff,**

    v.

UNITED STATES OF AMERICA,

                **Defendant.**

Case No. 1:17-cv-238
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant United States of America's (the "Government") Motion for Summary Judgment (Doc. 15) seeking dismissal of Plaintiff Harry M. Fuller III's ("Fuller") Complaint (Doc. 1) in its entirety. For the reasons below, the Court **GRANTS** the Government's Motion for Summary Judgment (Doc. 15), **DISMISSES WITH PREJUDICE** Fuller's Complaint, and **DIRECTS** the Clerk to enter judgment accordingly.

## FACTS

Harry H. Fuller II ("Fuller II") passed away on April 26, 2002. (Fuller Dep. at 12, Doc. 13, #55). He was the decedent of the estate of Harry H. Fuller II (the "Estate") and the father of Fuller, who is the plaintiff here. (*Id.* at 13). On July 25, 2003, Fuller filed a tax return on behalf of the Estate, which declared $0 liability for federal estate taxes. (Def.'s Mot. for Summ. J., Ex. 1 ("Form 4340"), Doc. 14, #118; Fuller Dep., Ex. 1, #79–82).

On May 19, 2006, the Hamilton County Probate Court appointed Fuller as the executor of the Estate. (Fuller Dep., Ex. 4, #104). A month later, on June 9, 2006 (the "assessment date"), the Internal Revenue Service ("IRS") gave Fuller notice that it disagreed with the Estate's tax return. (*Id.* at 45, 47, 49, #64–65). According to the IRS, the Estate should have reported a tax obligation of $170,558. (Form 4340, #118). Fuller does not dispute that this was the correct amount of the estate tax that should have been paid. (Fuller Dep. at 46–47, #64). Moreover, because the Estate had not paid the tax amount when it was due and owing, penalties and interest had also began to accrue on that unpaid amount. (Form 4340, #118). When the Estate closed in September 2007, the assessment for additional estate tax against the Estate, along with the accrued (and accruing) penalties and interest, remained unpaid. (Fuller Dep. at 36–37, #61–62).

Roughly three years after the assessment date, on April 9, 2009, Fuller visited an IRS office in Cincinnati, Ohio, and met with an IRS representative. (*Id.* at 54–56, #66). During that meeting, Fuller told the IRS representative that he wanted to pay $50,000 toward the Estate's tax liability balance. (*Id.* at 56–57, #66–67). Fuller did not ask for the Estate's balance, but gave a cashier's check for $50,000 to the IRS representative. (*Id.* at 57, #67; *see id.*, Ex. 4, #102). Although Fuller did not receive any receipt or written documentation for the $50,000 payment, no one disputes that he paid that amount, nor is there any question that the amount was applied toward the Estate's then-outstanding federal estate tax liability. (*Id.*; Form 4340, #119).

Eight months later, on December 11, 2009, Fuller again visited the same IRS office and spoke to another IRS representative, who Fuller has never identified. (Fuller Dep. at 66–67, #69). This time, Fuller claims he told the IRS representative that he wanted to "settle [the Estate's] taxes that [were] due," but that he did not know what that amount was. (*Id.* at 68–70, #69–70). The IRS representative accessed the Estate's account on his computer system, allegedly told Fuller that the balance of the taxes was $120,588, and wrote that figure on a piece of paper, which he then showed to Fuller. (*Id.* at 68–70, 77, #69–70, 72).

At that time, Fuller had access to approximately $190,000, all of which he intended to use (to the extent needed) to settle the Estate's entire tax liability. (*Id.* at 64, #68). Based on the IRS representative's statement, Fuller executed a check payable to the "United States Treasury" for $120,558, and he gave that check to the IRS representative. (*Id.* at 72, #70; *id.*, Ex. 4, #103). On that check's memo line, Fuller wrote "Estate Tax Pd in Full." (Pl.'s Compl., Ex. C., #9). It is undisputed that the IRS applied $120,558 to the Estate's then-outstanding federal estate tax debt. (Form 4340, #119). Fuller neither asked for nor received any receipt or written documentation of this payment, nor did he receive the piece of paper on which the IRS representative allegedly wrote the amount. (Fuller Dep. at 74, #71).

Fuller claims that he left the IRS office believing that, in combination with the April 2009 payment for $50,000, he had satisfied the Estate's tax liability by paying $170,558—the amount listed as the tax amount in the Estate's June 2006 tax assessment. (*Id.* at 78–79, #72). At that point, he allegedly did not know that the

Estate's tax debt had accrued additional interest and penalties, both before he received the assessment notice in June 2006, and after. (*Id.* at 58, #67). As a result of the interest and penalties that had accrued, it appears there is no genuine dispute that, at the time Fuller made the December 2009 payment of $120,558, the Estate actually owed approximately $243,000 in taxes, penalties, and interest. Thus, the December 2009 payment of $120,558 left roughly $122,000 in unpaid tax obligations at that time (which of course continued to accrue interest and penalties).

Fuller claims he first learned on June 6, 2011, that: (1) he had not resolved the Estate's tax debt in December 2009, and (2) penalties and interest had been accruing since 2003 on unpaid amounts and continued to accrue after his December 2009 payment. He claims he learned this when he received a letter from the IRS. (*Id.* at 79–80, #72). The June 2011 letter reported that the Estate's unpaid balance remaining as of that time was $138,338.42, referenced penalties and interest, and notified Fuller that if the amount owed was not paid by June 30, 2011, then the IRS would "continue to add penalties and interest until the amount is paid in full." (*Id.* at 49–50, #65; *id.*, Ex. 6, #116; Form 4340, #122).

In addition to the June 9, 2006 and June 6, 2011 collection notices that Fuller admits receiving, the IRS sent collection notices to Fuller on June 4, 2007; June 2, 2008; June 8, 2009; June 7, 2010; June 4, 2012; June 10, 2013; and June 9, 2014. (Form 4340, #122). Fuller avers he was unaware of the 2007, 2008, 2009, 2010, and 2012 notices. (Fuller Dep. at 49, #65). There is no documentation proving whether Fuller received the notices or not.

4

On March 13, 2015, Fuller paid $155,643.73 to the IRS, thereby settling the Estate's tax obligation once and for all. (Form 4340, #121). To obtain the funds for that payment, Fuller mortgaged one of the Estate's real property assets. (Fuller Dep. at 23–25, #58–59; *id.*, Ex. 1, #81). After timely submitting a claim for a refund to the IRS in July 2016, Fuller filed this action in April 2017 seeking a refund of the entire $155,643.73 that he paid on behalf of the Estate after December 2009. (Pl.'s Compl. at ¶¶ 14–16, #2–3).

## THE PENDING MOTION

The Government now moves for summary judgment on Fuller's claim. The foundation of Fuller's claim is that the Estate only incurred interest and penalties because in December 2009 an IRS representative mistakenly provided the Estate's *tax* balance to Fuller, rather than its *total* balance, i.e., the Estate's tax balance, plus accrued penalties and interest. In other words, Fuller contends that the IRS should be bound by its representative's statement regarding the amount of the Estate taxes that were due and owing on December 11, 2009, and that the Estate is thus released of any obligation to pay any amount beyond the perceived "payment in full" that occurred that day.

In its pending motion, the Government correctly characterizes Fuller's argument as sounding in estoppel—indeed, "I relied on the IRS agent's advice" is perhaps the quintessential hypothetical typically employed in law school classrooms to discuss and explore the permissible scope of estoppel arguments against the government. Here, the Government claims Fuller's estoppel argument fails for two

reasons. First, Fuller cannot prove the Government engaged in any affirmative misconduct. Second, Fuller cannot establish that he relied—and certainly not that he reasonably relied—to his detriment on the information the IRS representative provided. The Court considers each below.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine disputes of material fact, which the movant may do by demonstrating that the non-moving party lacks evidence to support an essential element of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). In response to the movant's showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). In other words, the existence of a "mere scintilla of evidence" in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment). That being said, "summary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 248.

Finally, in conducting the summary judgment analysis, the Court must view

the evidence in the light most favorable to the non-moving party. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable

inferences in favor of the non-moving party and must refrain from making credibility

determinations or weighing evidence).

## LAW AND ANALYSIS

There appears to be little dispute here about the underlying tax calculations,

either as to the original assessment, or as to the penalties and interest that have

accrued since. Rather, Fuller's claim is that, independent of what the Estate actually

owed, the Estate should be relieved of that obligation due to the representations that

an IRS agent allegedly made to him—a classic, perhaps "the" classic, government

estoppel argument.

"It is well established that estoppel cannot be used against the government on

the same terms as against private parties." *United States v. Guy*, 978 F.2d 934, 937

(6th Cir. 1992) (citing *Office Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990)). "The

party attempting to estop the government bears a very heavy burden." *Fisher v.*

*Peters*, 249 F.3d 433, 444 (6th Cir. 2001) (citing *Richmond*, 496 U.S. at 422). "The

general rule is that reliance on misinformation provided by a government employee

does not provide a basis for an estoppel." *Crown v. United States R.R. Ret. Bd.*, 811 F.2d 1017, 1021 (7th Cir. 1987). And, "[i]f a party claims the government is estopped from making an argument, summary judgment is appropriate in favor of the government if there is an insufficient showing for any of the estoppel arguments." *Michigan Express, Inc. v. United States*, 374 F.3d 424, 426 (6th Cir. 2004) (citing *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992)).

The traditional elements required to invoke equitable estoppel are: (i) a definite misrepresentation by one party, (ii) intended to induce some action in reliance, and (iii) which does reasonably induce action in reliance by another party to his detriment. *Guy*, 978 F.2d at 937 (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984)) (additional citation omitted). In addition to these traditional estoppel elements, a party asserting estoppel against the government must also "demonstrate some 'affirmative misconduct' by the government." *Michigan Express*, 374 F.3d at 427. Applying these elements to the undisputed facts, Fuller cannot establish any basis for estoppel here for two reasons. First, the Government did not engage in affirmative misconduct. Second, Fuller cannot show that he reasonably relied on the IRS representative's statement.

## A.     On The Undisputed Facts, Fuller Cannot Show That The Government Engaged In Affirmative Misconduct.

The Government does not dispute that the IRS representative orally provided the Estate's tax balance instead of its total balance to Fuller in December 2009. The parties disagree, however, over whether that oral representation qualifies as affirmative misconduct by the Government. In Fuller's view, affirmative misconduct

can be established by an IRS agent's oral statements so long as the party relying on those statements has no other way to verify the information that is provided. (Pl.'s Memo. in Opp'n at 10, #152) (citing *L.E.F., Inc. v. United States*, No. 95-cv-75068, 1997 WL 1037879, at *5 (E.D. Mich. July 23, 1997)). But that formulation omits the necessary showing that "the government … either intentionally or recklessly" misled him. *Michigan Express*, 374 F.3d at 427.

Here, nothing in the record suggests that the IRS representative intended to trick or mislead Fuller by providing him the remaining balance of the Estate's *tax* liability, as opposed to the Estate's *total* liability (i.e., the remaining balance of the tax, plus accrued interest and penalties). To start, nothing in the record shows that the IRS representative even necessarily knew that he had incorrectly answered Fuller's question. That is, when Fuller asked the IRS representative for the balance of the Estate's account on December 11, 2009, the representative provided the outstanding *tax* balance (i.e., the amount of the original $170,558 assessment that remained unpaid—$120,558). Fuller asserts now that this question was intended to elicit the *total* balance (i.e., taxes plus interest and penalties). But given the vagueness of Fuller's inquiry, the IRS representative could have simply misunderstood what Fuller wanted—providing the right answer to the question he thought Fuller had asked.

That being said, because the facts must be viewed in a light most favorable to Fuller in resolving this motion for summary judgment, the Court assumes the IRS representative understood Fuller's request to be for the entire balance then due, and

provided an incorrect response. Even so, however, on the facts here the IRS representative's answer amounts to—at worst—inaccurate information. It is well settled that providing inaccurate information does not constitute affirmative misconduct unless the government agent provides it deliberately or fraudulently. *Pauly v. United States Dep't of Agric.*, 348 F.3d 1143, 1149–50 (6th Cir. 2003). And here, there is simply no evidence in the record (or, frankly, even an allegation) that the unidentified IRS representative provided Fuller the Estate's less-than-total liability in bad faith. Accordingly, that misrepresentation "does not rise to the requisite level of malfeasance to qualify as 'affirmative misconduct.'" *Michigan Express*, 374 F.3d at 427. The absence of any such evidence dooms Fuller's claim.

Because Fuller cannot show the Government engaged in any affirmative misconduct, his attempt to invoke estoppel fails.

**B.  Fuller Cannot Establish Reasonable Reliance On The IRS Representative's Oral Statements.**

Fuller's estoppel claim also founders on the reliance element. When a party seeks to estop the government, the reasonable reliance element has more teeth than elsewhere. Under the applicable framework, Fuller cannot show reasonable reliance for multiple reasons.

First, as a threshold matter, a party seeking to estop the government cannot rely on alleged oral representations. *Heckler*, 467 U.S. at 65. "That is especially true when a complex program … is involved, in which the need for written records is manifest." *Id.* No one can doubt that the federal tax system constitutes a "complex program." *Bob Jones Univ. v. United States*, 461 U.S. 574, 596 (1983); *see Mortenson*

10

*v. Comm'r*, 440 F.3d 375, 385 (6th Cir. 2006) ("The [Tax] Code is complex"). Accordingly, the need for written records to serve as the basis for an estoppel claim is essential here. Yet Fuller has provided no written representation by a government agent in support of his claim. That, in and of itself, is dispositive.

Moreover, not only is the need for written evidence to support a government estoppel claim ensconced in the law, but it also makes sense. To start, absent a writing requirement, estoppel arguments could quickly devolve into swearing contests about who said exactly what and when. Given the number of government representatives, and the number of their interactions with citizens on a daily basis, that has all the makings of chaos. But separately, the writing requirement serves a type of cautionary function. As the Supreme Court explained in *Heckler*, the writing requirement protects against (among other things) inexactitude in matters involving public funds, and also helps ensure that the governmental statements at issue were meant as some form of official statement, perhaps even subject to "review, criticism, and reexamination." *See Heckler*, 467 U.S. at 65. Such concerns are aptly illustrated here, where it appears that, at most, the IRS representative created a hastily dashed out transitory note that was not intended to serve any official function, and that no one even preserved. That does not, and should not, provide any basis for estoppel.

Second, even apart from the lack of a writing, given the nature of the alleged representation at issue here, the law does not support Fuller's argument that his reliance was reasonable. It is well-established that "those who deal with the Government are expected to know the law and may not rely on the conduct of

Government agents contrary to law." *Heckler*, 467 U.S. at 63; *Automobile Club of Mich. v. C.I.R.*, 353 U.S. 180, 183 (1957) ("The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law."). That is especially true if the citizen has the tools to figure out the correct answer on his or her own. *Guy*, 978 F.2d at 937. Notably, though, that forbidden form of reliance is exactly what Fuller asserts here. All agree that, even if the IRS representative stated in December 2009 that $120,558 would settle the account, that statement was "contrary to law." Thus, it could not provide the basis for an estoppel.

And even putting that aside, as to any amounts due as of December 2009, when the statement was allegedly made, Fuller's attempt to show reliance wholly fails as a practical matter. The Estate owed what it owed as of December 2009, including any applicable interest and penalties. Fuller could not have detrimentally relied by paying a lesser amount based on a contrary statement by an IRS representative about the amount owed. To illustrate, suppose the Estate owed $100,000, and an IRS representative said "the amount owed is $60,000." By paying the lesser amount, the Estate has not relied *to its detriment*. Rather, the Estate has $40,000 more in its bank account than it otherwise would have. Using estoppel to adjust the tax obligation down to $60,000 would simply be a $40,000 windfall for the Estate. That is not "reliance," nor is providing windfalls the role that the equitable doctrine of estoppel is designed to play.

As to amounts that accrued *after* December 11, 2009 (i.e., additional interest and penalties that arose based on Fuller's failure to pay the full amount due on that

12

date, as he claims he intended to do—and thought he did), the reliance analysis is perhaps somewhat different, but the end result is the same. Regarding those later-accrued amounts, Fuller could argue that he relied on the IRS representative's statement in December 2009 by ceasing any additional efforts to explore or verify the amounts actually due, and as a result the Estate incurred additional penalties and interest that would not have arisen but for the alleged misrepresentation.

But, while that is perhaps a stronger factual reliance argument than exists as to pre-December 2009 accruals, it still falls short of the necessary showing for a government estoppel argument. The basic problem remains the same. The underlying alleged representation—the amount of money due and owing as of December 2009—is not the form of governmental representation on which a party is entitled to rely. *Auto. Club of Michigan*, 353 U.S. at 183. Citizens are presumed to know the law, especially if the legal answer is ascertainable. *Guy*, 978 F.2d at 937. Here, it was. The tax code may be "complex," but it is not impenetrable. A tax professional undoubtedly could have computed the Estate's tax liability, including interest and penalties, as of December 2009. Thus, as a matter of law, Fuller cannot claim reasonable reliance on a statement asserting a different amount. And that observation applies with equal force to the consequences that flowed from his failure to more fully investigate the then-current tax obligation.

To be sure, had Fuller hired a tax professional, and had that professional given incorrect advice, Fuller (or perhaps the Estate) may well have had some form of malpractice claim against that person. But the IRS representative is employed by the

Government, not by Fuller or the Estate, and he certainly owed no actionable professional duty to them. And, in any event, estoppel is not meant to serve as some alternative, stop-gap form of malpractice action.

In short, Fuller cannot establish reasonable reliance on the IRS agent's statement here.

## CONCLUSION

The undisputed facts show that Fuller cannot prove an estoppel claim against the Government. Thus, the Court **GRANTS** the Government's Motion for Summary Judgment (Doc. 15), **DISMISSES WITH PREJUDICE** Fuller's Complaint (Doc. 1), and **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

March 6, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**